125 T.C. No. 11


UNITED STATES TAX COURT


ESTATE OF DORIS F. KAHN, DECEASED, LASALLE BANK, N.A., TRUSTEE
AND EXECUTOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 12551-04.                    Filed November 17, 2005.


        The estate filed Form 706, U.S. Estate (and
Generation-Skipping Transfer) Tax Return ("estate tax
return").  R issued a notice of deficiency that inter
alia asserted increases to the gross estate by
disallowing a reduction in value of P's individual
retirement accounts (IRAs) by the expected Federal
income tax liability resulting from the distribution of
the IRAs' assets to the beneficiaries under sec.
408(d)(1), I.R.C. (income tax liability).  This matter
is before us on P's motion for partial summary judgment
under Rule 121(a), contesting R's disallowance of the
reduction in the value of the IRAs.  R filed a cross-
motion for summary judgment in response to P's motion.

        <u>Held</u>:  In computing the gross estate value, the
value of the assets held in the IRAs is not reduced by
the anticipated income tax liability following the

distribution of the IRAs. A hypothetical sale between a willing buyer and a willing seller would not trigger the tax liability of distributing the assets in the IRAs because the subject matter of a hypothetical sale would be the underlying assets of the IRAs (marketable securities), not the IRAs themselves. Further, sec. 691(c), I.R.C., addresses the potential double tax issue. Accordingly, the valuation of the IRAs should depend on their respective net aggregate asset values.

Held, further, a discount for lack of marketability is not warranted because the assets in the IRAs are publicly traded securities. Payment of the tax upon the distribution of the assets in the IRA is not a prerequisite to making the assets in the IRAs marketable. Thus, there is no basis for a discount.

Jonathan E. Strouse, for petitioner.

Jason W. Anderson and Laurie A. Nasky, for respondent.

OPINION

GOEKE, Judge: This matter is before the Court on cross-motions for summary judgment under Rule 121(a).[1]

Respondent issued a notice of deficiency in the Federal estate tax of the estate of decedent Doris F. Kahn (the estate), determining, among other adjustments, that the estate had undervalued two IRAs on the estate's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. The issue before us is whether the estate may reduce the value of the two IRAs included in the gross estate by the anticipated income tax

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect as of the date of the decedent's death, unless otherwise indicated.

liability that would be incurred by the designated beneficiary upon distribution of the IRAs. We hold that the estate may not reduce the value of the IRAs.

The following is a summary of the relevant facts that are not in dispute. They are stated solely for purposes of deciding the pending cross-motions for summary judgment and are not findings of fact for this case. See Lakewood Associates v. Commissioner, T.C. Memo. 1995-552 (citing Fed. R. Civ. P. 52(a)).

Background

Doris F. Kahn (decedent) died testate on February 16, 2000 (the valuation date). At the time of death, decedent resided in Glencoe, Illinois. The trustee and executor of the decedent's estate, LaSalle Bank, N.A., had its office in Chicago, Illinois, at the time the petition was filed. At the time of her death, decedent owned two IRAs--a Harris Bank IRA and a Rothschild IRA. Both IRA trust agreements provide that the interests in the IRAs themselves are not transferable; however, both IRAs allow the underlying marketable securities to be sold.[2] The Harris IRA

---

[2]The Rothschild IRA agreement provides:

> Section 5.7B. Neither the Account Holder nor the Trustee shall have the right to amend or terminate this Trust in such a manner as would cause or permit all or part of the entire interest of the Account Holder to be diverted for purposes other than their exclusive benefit or that of their Beneficiary. No Account Holder shall have the right to sell, assign, discount, or pledge as collateral for a loan any asset of this trust.

(continued...)

contained marketable securities with a net asset value (NAV) of $1,401,347, and the Rothschild IRA contained marketable securities with a NAV of $1,219,063.  On the estate's original Form 706, the estate reduced the NAV of the Harris IRA by 21 percent to $1,102,842 to reflect the anticipated income tax liability from the distribution of its assets to the

---

[2](...continued)

> Section 5.5H.  The Brokerage Firm named in the Application is designated by the Account Holder with authority to provide the Trustee with instructions, via confirmations or otherwise, implementing his or her directions to the Brokerage Firm to purchase and sell securities for his or her account.

Thus, although the account holder cannot personally sell the securities, he may do so through the brokerage firm and trustee.

The Harris IRA Agreement provides:

> 5.6  Neither the Grantor nor any Beneficiary may borrow Trust property from the Trust or pledge it for security for a loan.  Margin accounts and transactions on margins are prohibited for the Trust.  No interest in the Trust shall be assignable by the voluntary or involuntary act of any person or by operation of law or be liable in any way for any debts, marital or support obligations, judgments or other obligations of any person, except as otherwise provided by law.  No person may engage in any transaction with respect to the Trust which is a "prohibited transaction" within the meaning of Code Section 4975.

> 5.9 * * *the Trustee shall have the following powers * * * (d) to purchase, sell assign or exchange any Trust property and to grant and exercise options with respect to Trust property.

Here, again, although the IRA itself cannot be sold, the trustee has the power to sell the underlying assets.

beneficiaries. The estate did not report the value of the Rothschild IRA on the original tax return. On the amended estate tax return, the estate reduced the value of the Rothschild IRA by 22.5 percent to $1,000,574 to reflect the income tax liability upon the distribution of its assets to the beneficiaries.

Respondent determined in the notice of deficiency an estate tax of $843,892.[3] The estate's motion for partial summary judgment was filed on June 30, 2005, and on June 30, 2005, respondent's cross-motion for summary judgment was filed seeking summary adjudication on the following issues: (1) Whether the value of each IRA is less than the value of the NAVs, and (2) whether the estate properly deducted amounts not paid for estimated Federal income tax liabilities of decedent. The estate filed a reply in opposition to respondent's cross-motion for summary judgment; however, the estate did not address the second issue regarding the validity of the estate's deduction. We therefore consider this issue to be conceded by the estate.

---

[3]The only portion of the deficiency that is in dispute is the amount attributable to the valuation of the IRAs. In the Form 886-A, Explanation of Adjustments, respondent determined that the value of the Harris IRA should be increased from $1,086,044 to $1,401,347 "to more accurately reflect the fair market value of this asset at the date of death under secs. 2031 and 2039 of the Internal Revenue Code." Further, respondent determined that the value of the Rothschild IRA should be reported at $1,219,063. The Rothschild IRA was omitted from the original Federal estate tax return. The parties have stipulated the settlement of the remaining issues pertaining to the notice of deficiency that the estate raised in its petition.

Respondent also submitted a reply memorandum in opposition to the estate's motion for partial summary judgment.

## Discussion

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Either party may move for summary judgment upon all or any part of the legal issues in controversy. A decision may be rendered by way of summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985). This case is ripe for summary judgment because both parties agree on all of the relevant facts and a decision may be rendered as a matter of law.

Section 2001 imposes a Federal tax "on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States." A deceased taxpayer's gross estate includes the fair market value of any interest the decedent held in property. See secs. 2031(a), 2033; sec. 20.2031-1(b), Estate Tax

Regs.; <u>United States v. Cartwright</u>, 411 U.S. 546, 551 (1973). Fair market value reflects the price that the property would "change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." <u>United States v. Cartwright</u>, <u>supra</u> at 551; sec. 20.2031-1(b), Estate Tax Regs. Fair market value is an objective test that relies on a hypothetical buyer and seller. See <u>Estate of Bright v. United States</u>, 658 F.2d 999, 1005-1006 (5th Cir. 1981); <u>Rothgery v. United States</u>, 201 Ct. Cl. 183, 475 F.2d 591, 594 (1973); <u>United States v. Simmons</u>, 346 F.2d 213, 217 (5th Cir. 1965); <u>Estate of Andrews v. Commissioner</u>, 79 T.C. 938, 956 (1982). The willing buyer and the willing seller are hypothetical persons, rather than specific individuals or entities, and the individual characteristics of these hypothetical persons are not necessarily the same as the individual characteristics of the actual seller or the actual buyer. <u>Estate of Bright v. United States</u>, <u>supra</u> at 1005-1006; <u>Estate of Davis v. Commissioner</u>, 110 T.C. 530 (1998) (citing <u>Estate of Curry v. United States</u>, 706 F.2d 1424, 1428, 1431 (7th Cir. 1983)). The hypothetical willing buyer and willing seller are presumed to be dedicated to achieving the

maximum economic advantage.  Estate of Curry v. United States,
supra at 1428; Estate of Newhouse v. Commissioner, 94 T.C. 193,
218 (1990).[4]

## I.    Estate Tax Consequences Applicable to IRAs

An IRA is a trust created for the "exclusive benefit of an
individual or his beneficiaries."  Sec. 408(a), (h).  An IRA can
hold various types of assets, including stocks, bonds, mutual
funds, and certificates of deposit.  IRA owners may withdraw the
assets in their IRAs; however, there is a 10-percent additional
tax on early withdrawals subject to statutory restrictions.  See
sec. 72(t).

IRAs are exempt from income taxation as long as they do not
cease to exist as an IRA.  Sec. 408(e)(1).  Distributions from
IRAs are included in the recipient gross income of the
distributee.  Sec. 408(d)(1).  Hence, earnings from assets held
in an IRA are not subject to taxation in the IRA when earned, but
rather, are subject to taxation when distributions are made.
This fact does not change when the IRA is inherited from the
decedent.  See sec. 408(e)(1).  IRA owners can designate
beneficiaries to inherit IRAs in the event that the owner dies
before receiving distributions of the owner's entire interest in

---

[4]The estate makes the argument that "Neither the Code or
Regulations contains the requirement that the buyer and seller be
hypothetical."  However, the weight of authority clearly
contradicts the estate's assertion.

the IRA.  Distributions to beneficiaries of a decedent are includable in the gross income of the beneficiaries.  Secs. 408(d)(1), 691(a)(1)(B).  The portion of a lump-sum distribution to a decedent's beneficiary from an IRA, is, in the beneficiary's hands, income in respect of a decedent (IRD) in an amount equal to the excess of the account balance at the date of death over any nondeductible contributions by the decedent to the account. Such amount is included in the beneficiary's gross income the year in which it is received.  Sec. 691(a)(1).  The portion of the lump-sum distribution to the beneficiary in excess of the entire balance (including unrealized appreciation, accrued income and nondeductible contributions) in the IRA at the owner's death is not income in respect of a decedent.  Such amount is taxable to the beneficiary under sections 408(d) and 72, see Rev. Rul. 92-47, 1992-1 C.B. 198, in the taxable year the distribution is received.  Section 691(a)(3) provides that the character of the income in the hands of either the estate or decedent's beneficiary is the same as if decedent had such amount.  If an IRA owner dies before distributions were required to begin, the owner's interest in the IRA generally must be distributed to the beneficiary within 5 years of decedent's death.  Sec. 401(a)(9)(B)(ii).  If an IRA owner dies after distributions were required to begin, the IRA assets generally must be distributed

to the beneficiary of the IRA at least as rapidly as under the method of distribution to the owner.  Sec. 401(a)(9)(B)(i).

An IRA account owned by a decedent at death is considered part of the decedent's estate for Federal estate tax purposes. Sec. 2039(a).  As such, the estate must pay an estate tax on the value of the IRA.  Id.  In addition, an income tax will be assessed against the beneficiaries of the accounts when the accounts are distributed.  See secs. 408(d)(1), 691(a)(1)(B).  To compensate (at least partially) for this potential double taxation, Congress enacted section 691(c), which grants the recipient of an item of IRD an income tax deduction equal to the amount of Federal estate tax attributable to that item of IRD. Estate of Smith v. United States, 391 F.3d 621, 626 (5th Cir. 2004) (citing sec. 691(c)), affg. 300 F. Supp. 2d 474 (S.D. Tex. 2004).  Therefore, decedent's beneficiaries will be allowed a deduction in the amount of Federal estate tax paid on the items of IRD included in the distributions to them from the IRA.  The deduction is allowed in the same year the income is recognized--that is, when the IRA is actually distributed.  See sec. 691(c)(1)(A).

II.  The Estate's Arguments That Income Tax Liability Should Be Taken Into Account in the Valuation of the IRAs

The estate contends that the application of the willing buyer-willing seller test mandates a reduction in the fair market value of the IRAs to reflect the tax liability associated with

their distribution.  The logic of the estate's argument is that the IRAs themselves are not transferable and therefore are unmarketable.  According to the estate, the only way that the owner of the IRAs could create an asset that a willing seller could sell and a willing buyer could buy is to distribute the underlying assets in the IRAs and to pay the income tax liability resulting from the distribution.  Upon distribution, the beneficiary must pay income tax.  Therefore, according to the estate, the income tax liability the beneficiary must pay on distribution of the assets in the IRAs is a "cost" necessary to "render the assets marketable" and this cost must be taken into account in the valuation of the IRAs.

In support of its argument, the estate cites caselaw from three different areas of estate valuation that allow a reduction in value of the assets in an estate for costs necessary to render an estate's assets marketable or that have otherwise considered the tax impact of a disposition of the estate's assets in other contexts.  The first line of cases allows consideration of a future tax detriment or a future tax benefit to the assets in the estate.  The second line of cases allows a marketability discount in connection with assets that are either unmarketable or face significant marketability restrictions.  The third line of cases allows for a reduction in value to reflect the cost of making an asset marketable, such as the costs associated with rezoning and

decontamination of real property.  The estate contends that each line of cases is analogous to the estate's circumstances and therefore provides authority to resolve the matter in favor of the estate.

   A.   Cases Allowing Consideration of Future Tax Detriments or Benefits

        Built-in Capital Gains Cases

   The estate relies on Estate of Davis v. Commissioner, 110 T.C. 530 (1998), and its progeny[5] to support the proposition that the value of the IRAs should be reduced by the income tax liability resulting from their distribution.  In Estate of Davis, the donor held shares of a closely held corporation.  The corporation held assets which had appreciated and could not readily be sold without payment of Federal income tax.  The Internal Revenue Service argued that the gift tax value of the donor's interest in the corporation should not be adjusted or

_____

   [5]See, e.g., Estate of Dunn v. Commissioner, 301 F.3d 339 (5th Cir. 2002), revg. T.C. Memo. 2000-12; Estate of Jameson v. Commissioner, 267 F.3d 366 (5th Cir. 2001), revg. T.C. Memo. 1999-43; Eisenberg v. Commissioner, 155 F.3d 50 (2d Cir. 1998), revg. T.C. Memo. 1997-483.  Prior to 1986, courts generally held that an estate could not reduce the value of closely held stock by the capital gains tax potential.  The repeal of the General Utilities doctrine, by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, dealing with corporate liquidations, prompted courts to reconsider the settled law and allow estates to take capital gains tax attributable to closely held corporate stock into account.  Gen. Utils. & Operating Co. v. Helvering, 296 U.S. 200 (1935); see Dunn v. Commissioner, supra; Estate of Jameson v. Commissioner, supra; Eisenberg v. Commissioner, supra; Estate of Davis v. Commissioner, 110 T.C. 530 (1998).

discounted for built-in capital gains tax with respect to the underlying assets. This Court, however, agreed with the donor's estate that the value of the stock must be discounted to allow for the tax liability that would be paid upon selling the assets in the corporation. This Court concluded that "even though no liquidation of * * * [the corporation] or sale of its assets was planned or contemplated on the valuation date, a hypothetical willing seller and a hypothetical willing buyer would not have agreed on that date on a price for each of the blocks of stock in question that took no account of [the corporation's] built-in capital gains tax." Id. at 550. Similarly, in Eisenberg v. Commissioner, 155 F.3d 50 (2d Cir. 1998), revg. T.C. Memo. 1997-483, the Court of Appeals for the Second Circuit held that the donor may consider the potential future capital gains tax liability resulting from corporate liquidation when valuing a gift of corporate stock. In applying the willing buyer-willing seller test, the court reasoned that "'the potential transaction is to be analyzed from the viewpoint of a hypothetical buyer whose only goal is to maximize his advantage. * * * [C]ourts may not permit the positing of transactions which are unlikely and plainly contrary to the economic interest of a hypothetical buyer.'." Id. at 57 (quoting Estate of Curry v. United States, 706 F.2d at 1428-1429).

Here, the estate argues that it has a stronger case than the taxpayer in Estate of Davis because in that case, unlike this case, the taxpayer's asset--the stock--could be marketed without paying the income tax liability associated with the sale of the underlying assets. The estate contends that "it is not merely likely, it is legally certain, that the IRA could not be sold at all, nor could the underlying assets be sold by Petitioner except by distributing the assets and paying the tax on that distribution."

The second portion of this statement is simply not true. The IRA trust agreements provide that the account holder may not sell their IRA interest; however, the agreements specifically provide that the underlying assets in the IRAs may be sold. See supra note 2. Because it is legally certain that the IRAs cannot be sold, the subject of a hypothetical sale between a willing seller and a willing buyer would not be the IRAs themselves but their underlying assets, which are marketable securities. The sale of the underlying marketable securities in the IRAs is not comparable to the sale of closely held stock because in the case of closely held stock, the capital gains tax potential associated with the potential liquidation of the corporation survives the transfer to an unrelated third party. The survival of the capital gains tax liability is exactly why a hypothetical buyer would take it into account. See Estate of Smith v. United

States, 391 F.3d at 628.[6]  Because the tax burden associated with distributing the assets in the IRAs will never be transferred to a hypothetical buyer, we find that the reasoning of Estate of Davis v. Commissioner, supra, inapplicable to this case.

    B.   Cases Where Future Tax Benefit Taken Into Account

        1.   Estate of Algerine Smith–Value of Section 1341 Deduction Taken Into Account in Valuing Claim Against Estate

In Estate of Algerine Smith v. Commissioner,[7] 198 F.3d 515 (5th Cir. 1999), revg. 108 T.C. 412 (1997), the Court of Appeals for the Fifth Circuit addressed whether to consider the impact of an income tax benefit in valuing a claim against an estate for the purpose of the estate tax deduction under section 2053.  The estate owned a royalty interest in Exxon.  The U.S. Government had obtained a multibillion dollar judgment against Exxon, and the company asserted that it had the right to recoup some of the royalty payments it made to the estate and others to pay that judgment.  Exxon sued the royalty owners, and the District Court ruled on a motion for summary judgment determining that the royalty owners were liable to Exxon.  The court then referred the

---

[6]Estate of Smith v. United States, 300 F. Supp. 2d 474 (S.D. Tex. 2004), affd. 391 F.3d 621 (5th Cir. 2004), is discussed at length infra sec. III.

[7]For the sake of avoiding confusion, we are providing a method to differentiate this Estate of Smith from the Estate of Smith cited in this section and further discussed infra sec. III.

calculation of damages to a special master.  Exxon claimed that it was owed a total of $2.48 million by the estate.  Exxon settled with the estate 15 months after decedent died for $681,840.

The Commissioner determined a deficiency, asserting that the estate was allowed to deduct only the amount paid in settlement because Exxon's claim was pending at the time of decedent's death, and therefore the amount of the decedent's liability on that claim was then uncertain.  The Tax Court agreed with the Commissioner's conclusion.  See Estate of Algerine Smith v. Commissioner, 108 T.C. 412 (1997).  The Court of Appeals, in reversing, vacating, and remanding the Tax Court's original decision, concluded that the estate was entitled to deduct more than the settlement amount, but that the estate was not permitted to deduct the full amount that was being claimed by Exxon at decedent's death.  Further, the Court of Appeals determined that the income tax relief afforded by section 1341 upon the payment of the settlement amount should offset the $2.48 million claim in calculating the amount of the deduction.  Applying the willing buyer-willing seller test, the Court of Appeals stated that "We perceive no reason why this standard [willing buyer-willing seller test] should presume that the participants in the hypothetical transaction would not account for the net tax

effect--including the * * * [section] 1341 benefit--that would flow from a judgment against the hypothetical estate." Estate of Algerine Smith v. Commissioner, 198 F.3d at 528.

The estate's reliance on this case is misplaced because in Estate of Algerine Smith the tax benefit from the section 1341 deduction was "inextricably intertwined" with the payment of the claim against the estate. Id. Thus, the willing buyer-willing seller test would offset the amount of the benefit against the value of the claim. However, in this case, there is no contingent tax liability or tax benefit to take into account when determining the value a willing buyer would pay for the assets in the IRAs. Therefore, this example of accounting for tax consequences in valuing assets in an estate is distinguishable from the present valuation issue. A hypothetical buyer would not consider the income tax liability of the beneficiary of the IRAs because it is the beneficiary rather than the buyer who would pay that tax. Estate of Smith v. United States, 391 F.3d at 626 (discussed infra).

### 2. Lack of Marketability Discount Cases

#### a. Closely Held Corporate Stock

The estate's attempt to introduce a lack of marketability discount reveals the most fundamental flaw in its argument. In Estate of Davis v. Commissioner, 110 T.C. 530 (1998), the discount for the capital gains tax liability was part of a

general lack of marketability discount.  Shares in a nonpublic

corporation suffer from lack of marketability because of the

absence of a private placement market and the fact that

floatation costs would have to be incurred if the corporation

were to offer its stock publicly.  Estate of Andrews v.

Commissioner, 79 T.C. at 953.  However, there are no such

barriers to the disposition of assets held within the IRAs.  The

assets in the IRAs are traded on established markets and

exchanges, unlike stock in a closely held corporation.  Although

the IRAs themselves are not marketable, the underlying securities

of the IRA are indeed marketable.  Neither the distribution of

the assets in the IRAs nor the payment of the tax upon

distribution is a prerequisite to the marketability of the

assets, as the estate implies.  Therefore, a lack of

marketability discount is not warranted.  If we were to follow

the estate's line of reasoning, then in any circumstance where a

seller recognizes gain on the disposition of an asset, the fair

market value of an asset would be reduced to reflect taxes

attributable to the gain.  Further, as this Court observed in

Estate of Robinson v. Commissioner, 69 T.C. 222, 225 (1977), a

similar case discussed further infra, the broad ramifications of

such an argument--

> demonstrate its frailty.  For instance, under that
> approach, every determination of fair market value for
> estate tax purposes would require consideration of
> possible income tax consequences as well as a myriad of

> other factors that are peculiar to the individual
> decedent, his estate, or his beneficiaries.
> Consideration would have to be given in a case such as
> the instant one, for example, as to when the estate is
> likely to distribute the * * * [asset] to the
> beneficiaries, and thereafter, to each beneficiary's
> unused capital loss carryovers, his possible tax
> planning to reduce future taxes on the gain included in
> each installment, his tax bracket both currently and in
> the future, his marital status, and other factors.  The
> willing buyer-willing seller test, though it may not be
> perfect, provides a more reasonable standard for
> determining value, and it must be followed.  [Fn. ref.
> omitted.]

By following the estate's line of reasoning, we would have to
consider intricacies in every valuation case that would eliminate
the "hypothetical" element of the willing buyer-willing seller
test.  The decision in Estate of Curry v. United States, 706 F.2d
1424 (7th Cir. 1983), summarizes the consequence if courts and
administrative bodies determining valuation consistently took the
subjective circumstances of the seller into account:  "To hold
otherwise would be to command future * * * [judges] to wade into
the thicket of personal [and] corporate idiosyncrasies and
non-market motives as part of their valuation quest, thus doing
great damage to the uniformity, stability, and predictability of
tax law administration."  Id. at 1431.  Here, we must decline the
opportunity that the estate has given us to eschew this important
concept underlying the willing buyer-willing seller test.

### b.   Lottery Cases

The estate cites several cases in the area of estate asset
valuation that examine the issue of whether unassignable lottery

payments remaining in decedent's estate at death should receive a marketability discount. In <u>Shackleford v. United States</u>, 262 F.3d 1028 (9th Cir. 2001), the taxpayer had won a State lottery and died prior to receiving all the payments. The taxpayer was precluded by State law from assigning those payments. The United States argued that the annuity rules of section 2039 should apply, and therefore the stream of payments should be valued under the tables set forth in section 7520. The estate argued that because of the lack of marketability of the payments, a lack of marketability discount should be allowed. The Court of Appeals for the Ninth Circuit upheld the District Court ruling and explained: "We have long recognized that restrictions on alienability reduce value." <u>Shackleford v. United States</u>, <u>supra</u> at 1032 (citing <u>Bayley v. Commissioner</u>, 624 F.2d 884, 885 (9th Cir. 1980); <u>Trust Servs. of Am., Inc. v. United States</u>, 885 F.2d 561, 569 (9th Cir. 1989)), affg. 69 T.C. 234 (1977). The Court of Appeals compared the situation with stock subject to resale restrictions that prevented it from being sold freely in a public market. <u>Shackleford v. United States</u>, <u>supra</u> at 1032.

The estate also cites a similar lottery case, <u>Estate of Gribauskas v. Commissioner</u>, 342 F.3d 85 (2d Cir. 2003), revg. 116 T.C. 142 (2001), where this Court held on facts similar to <u>Shackleford</u> that the taxpayer could not take the marketability discount. The Court of Appeals for the Second Circuit reversed

the Tax Court and allowed the marketability discount.  In allowing a marketability discount, the Court of Appeals reasoned that the "right to transfer is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property,' and that an asset subject to marketability restrictions is, as a rule, worth less than an identical item that is not so burdened."  Id. at 88 (quoting Shackleford v. United States, supra at 1032).

The estate's analogy fails to recognize a fundamental difference between the installment payments in a lottery prize and securities in an IRA.  Lottery payments are classified as annuities.  Estate of Gribauskas v. Commissioner, 116 T.C. 142 (2001), revd. on other grounds 342 F.3d 85 (2d Cir. 2003).  The restriction on marketability in both Shackleford and Gribauskas applied to each constituent payment within the entire prize.  IRAs, however, are trusts composed of marketable assets.  See sec. 408(a), (h).  As we have already discussed, the underlying assets of the IRAs are publicly traded securities that have no such marketability restrictions.  Therefore, Shackleford and Gribauskas do not support a marketability discount in this case.

### 3. Cases That Allow a Reduction in Value To Reflect the Cost of Making An Asset More Marketable

The estate cites two cases addressing the issue of valuing land that is either subject to unfavorable zoning or contaminated. In Estate of Spruill v. Commissioner, 88 T.C. 1197 (1987), this Court allowed valuation methods that required a reduction in the value of the decedent's property to reflect unfavorable zoning associated with the property and the potential litigation costs associated with obtaining zoning.[8] In Estate of Necastro v. Commissioner, T.C. Memo. 1994-352, this Court held that contaminated property could be discounted to account for the cost to clean the property. The estate characterizes these cases as instances where "this Court regularly allows discount for costs necessary to render an estate's assets marketable."

The estate's characterization of the holdings in these cases is misplaced. First, the valuation concerns associated with real property are markedly different from those associated with securities. For tangible property, the fair market value of property should reflect the highest and best use to which such property could be put on the date of valuation. See Symington v. Commissioner, 87 T.C. 892, 896 (1986). In the case of real property, the highest and best use of the land may need to take

---

[8]Although agreeing with the premise that these principles should be taken into account in valuation, this Court ultimately found that the expert in Estate of Spruill v. Commissioner, 88 T.C. 1197 (1987), failed to consider the reasonable probability of obtaining zoning at the time of decedent's death.

into account costs associated with zoning or decontamination. This analysis is inapplicable to marketable securities because they have no higher or better use. Therefore, there is no "cost" associated with making the securities more marketable.

4. <u>Summary</u>

The estate has attempted to convince us that nontransferable IRAs are similar in nature (1) to unassignable lottery payments, (2) stock in a closely held corporation, (3) stock that is subject to resale restrictions, (4) contaminated land, and (5) land that needs to be rezoned to reflect the highest and best use. We have distinguished all of these cases based on the same common denominator--the fact that the built-in capital gains liability and/or marketability restriction of the listed assets will still remain in the hands of a hypothetical buyer, while in our case, the hypothetical sale of marketable securities will not transfer any built-in tax liability or marketability restriction to a willing buyer.

The main problem with all of the arguments based on the above-cited cases is that the estate is trying to draw a parallel where one does not exist by comparing this situation to situations where a reduction in value is appropriate because a willing buyer would have to assume whatever burden was associated with that property--paying taxes, zoning costs, lack of control, lack of marketability, or resale restrictions. In this case, a

willing buyer would be obtaining the securities free and clear of any burden.  We have taken note of the fact that the IRAs themselves are not marketable.  Therefore, in determining their value under the willing buyer-willing seller test, we must take into account what would actually be sold--the securities.  In Davis v. Commissioner, 110 T.C. 530 (1998), and Eisenberg v. Commissioner, 155 F.3d 50 (2d Cir. 1998), vacating T.C. Memo. 1997-483, the interest in the entity was the subject of the hypothetical sale.  Therefore, the courts in those cases rightfully considered the tax liabilities and marketability restrictions accompanying those interests.  Here, however, we look through into the underlying assets of the entity because the assets are what would actually be sold, not the interest in the IRAs.

Further, the distribution of the IRAs is not a prerequisite to selling the securities.  Any tax liability that the beneficiary would pay upon the distribution of the IRAs would not be passed onto a willing buyer because the buyer would not purchase the IRAs as an entity because of their transferability restrictions.  Rather, a willing buyer would purchase the constituent assets of the IRAs.  Therefore, unlike all of the cases the estate cites, the tax liability is no longer a factor.  Further, the lack of marketability is no longer a factor because a hypothetical sale would not examine what a willing buyer would pay for the unmarketable interest in the IRAs but instead would

consider what a willing buyer would pay for the underlying marketable securities.  Therefore, any reduction in value for built-in tax liability or lack of marketability is unwarranted.

III.  <u>The Estate's IRAs Should Not Be Entitled to Any Kind of Discount</u>

We find that all of the cases cited by the estate to be distinguishable from this case, and that the differences in our case justify a rejection of the estate's proposed discount of the IRAs.  Further, we reject the estate's characterization of the tax liability that a beneficiary must pay upon distribution of the IRAs as a "cost" to make the underlying assets marketable. We agree with the Court of Appeals for the Fifth Circuit's reasoning in <u>Estate of Smith v. United States</u>, 391 F.3d 621 (5th Cir. 2004), which concludes that the application of the willing buyer-willing seller test does not allow the estate to reduce the value of its retirement accounts by the income tax liability. Further, we continue to follow the reasoning in our decision of <u>Estate of Robinson v. Commissioner</u>, 69 T.C. at 224, which holds that it is improper for this Court to ameliorate the potential double taxation that will occur because Congress has already provided such relief by enacting section 691(c).

A.    <u>Estate of Smith v. United States</u>[9]

We think the better reasoning lies in <u>Estate of Smith v.</u>

---

[9]See <u>Estate of Smith v. United States</u>, 300 F. Supp. 2d 474 (S.D. Texas 2004), affd. 391 F.3d 621 (5th Cir. 2004).

United States, 391 F.3d 621 (5th Cir. 2004), affg. 300 F. Supp. 2d 474 (S.D. Tex. 2004).  In Estate of Smith, the Court of Appeals for the Fifth Circuit, affirming the District Court, held that the proper valuation of certain retirement accounts included in a decedent's gross estate reflects the value of the securities held in decedent's retirement accounts as determined by reference to applicable securities rates on the date of decedent's death but does not include a discount for the income tax liability to the beneficiaries.  Id. at 628.  In Estate of Smith, as in this case, the underlying securities of the retirement accounts were readily marketable, while the retirement accounts were not because of  restrictions like those applicable to the IRAs in this case.  Just as the estate did in this case, the taxpayer in Estate of Smith supported its argument for the reduction in value of the retirement accounts by analogy to opinions that allowed estates possessing closely held corporate stock to reduce the value by the potential capital gains tax.[10]  Applying the willing buyer-willing seller test, the District Court reasoned that while the retirement accounts may generate a tax liability for the beneficiaries, a hypothetical willing buyer would not take the tax liability into consideration when purchasing the underlying securities but would simply pay the value of the securities as determined by applicable securities exchange prices.  The

_____

[10]This line of cases and petitioner's analysis were discussed supra sec. II.

District Court determined that the cases involving closely held corporate stock were "inapplicable to the instant dispute" and that "the specific issue before the Court appears to be one of first impression".  Estate of Smith v. United States, 300 F. Supp. 2d 474, 477 (S.D. Tex. 2004), affd. 391 F.3d 621 (5th Cir. 2004).  The estate argued that the retirement accounts were more than simply a collection of the assets contained within them and that due consideration must be paid to the accounts themselves. The District Court rejected this argument, concluding that "the accounts are equivalent to the assets contained within them * * * [and] The potential tax to be incurred by the seller, while significant to the seller, would not affect that sales price of the securities and would not factor into negotiations between the hypothetical buyer and seller."  Id. at 478 (emphasis added). The District Court observed that while there is a market for publicly traded securities such as those contained in the retirement accounts, there is no market for retirement accounts themselves.[11]  Therefore, the court concluded that "it is not

_____

[11]Although on the trial court level the estate pointed out the fact that there was no market for the retirement accounts, the estate did not go as far to argue that a lack of marketability discount should be applied.  On appeal, the estate argued for the lack of marketability discount but the Court of Appeals refused to consider the argument because the estate raised it for the first time on appeal.  See Estate of Smith v. United States, 391 F.3d 621, 625-626 (5th Cir. 2004).  We have set forth our reasons for finding that a lack of marketability discount is unwarranted in supra sec. II.

reasonable to apply the willing buyer/willing seller test to the * * * [retirement accounts] in the hands of the decedent as the Estate suggests." Id. The District Court concluded that a willing buyer would pay the value of the securities as determined by applicable securities exchange rates, and a willing seller would accept the same.

On appeal, the Court of Appeals for the Fifth Circuit agreed with the District Court's reasoning and further opined that "'There is no support in the law or regulations for [the estate's] approach which is designed to arrive at the value of the transfer as between the individual decedent and his estate or beneficiaries.'" Estate of Smith v. United States, 391 F.3d at 627 (quoting Estate of Robinson v. Commissioner, 69 T.C. 222, 225 (1977)). Further, the Court of Appeals determined that the estate failed to recognize that "the willing buyer-willing seller test is an objective one * * *[and] [t]hus, the hypothetical parties are not the Estate and the beneficiaries of the Retirement Accounts." Id. at 628. The Court of Appeals again rejected the estate's analogy to cases involving closely held corporate stock. First, the court observed that those cases were distinguishable because the type of asset involved was completely different. Second, the court made the crucial point that deflated the taxpayer's argument:

> while the stock considered in the above cases would
> have built-in capital gains even in the hands of a
> hypothetical buyer, the Retirement Accounts at issue

> here would not constitute income in respect of a
> decedent in the hands of a hypothetical buyer.  Income
> in respect of a decedent can only be recognized by: (1)
> the estate; (2) the person who acquires the right to
> receive the income by reason of the decedent's death;
> or (3) the person who acquires the right to receive the
> income by bequest, devise, or inheritance.  26 U.S.C. §
> 691(a)(1).  Thus, a hypothetical buyer could not buy
> income in respect of a decedent, and there would be no
> income tax imposed on a hypothetical buyer upon the
> liquidation of the accounts. * * *

Id. at 629.

We think that this distinction is the reason that all of petitioner's arguments in this case are meritless.  The tax or marketability burden on the IRAs must be borne by the seller because the IRAs cannot legally be sold and therefore their inherent tax liability and marketability restrictions cannot be passed on to a hypothetical buyer.  Therefore, there is no reason a hypothetical buyer would seek to adjust the price of the marketable securities that are ultimately being purchased.  By the same token, a hypothetical seller would not accept a downward adjustment in the value of the securities for a tax liability that does not survive the transfer of ownership of the assets.  A hypothetical buyer would not purchase the IRAs because they are not transferable.  The buyer would purchase the IRAs' marketable securities and would obtain a tax basis in the assets equal to the buyer's cost.  See sec. 1012.  The buyer would only have taxable gain on the disposition of the marketable securities to the extent they appreciated in value subsequent to the time of acquisition.  Therefore, the buyer would be willing to pay the

full fair market value for the securities without any discount.
We agree with the Fifth Circuit that "correctly applying the
willing buyer-willing seller test demonstrates that a
hypothetical buyer would not consider the income tax liability to
a beneficiary on the income in respect of a decedent since he is
not the beneficiary and thus would not be paying the income tax."
Estate of Smith v. United States, 391 F.2d at 628.

The estate argues that Estate of Smith was decided under a
different theory; i.e., that the case did not consider the
marketability discount argument. The estate also contends that
the reasoning in Estate of Smith fails to understand the nature
of IRA accounts. We have already independently considered and
rejected the marketability discount theory. Further, the
estate's argument that in general the tax consequences of
distributing the IRAs should be taken into account under the
willing buyer-willing seller test was the exact argument
considered by the court in Estate of Smith. Finally, the
estate's assertion that Estate of Smith fails to understand the
nature of IRAs is contradicted by the estate's misstatements of
the nature of IRAs.

B.  Section 691(c)

The Fifth Circuit Court of Appeals, as are we, was convinced
of the relevance of our holding in Estate of Robinson v.
Commissioner, 69 T.C. at 224, in particular the reasoning
utilizing section 691(c). In Estate of Robinson, this Court

examined the issue of whether to discount the value of installment notes in decedent's estate for future income taxes that the beneficiaries of those notes would pay on the income in respect of a decedent included in future installments. We determined that the statutory scheme in section 691 obviated the need to give the taxpayer any further relief. Id. at 226. Section 691(a)(1) provides that "all items of gross income in respect of a decedent * * *shall be included in the gross income, for the taxable year when received". Section 691(a)(3) provides that such income in the hands of the person acquiring a right to it from decedent will be treated in the same manner as it would have been in the hands of decedent. We noted that if the statute stopped here, installment notes transmitted by a decedent at his death would be included in decedent's estate at the fair market value provided under sections 2031 and 2033, and each portion of the future installment payments which represented taxable gain would be subject to an income tax in the year of receipt. Id. at 226. However, we further observed that section 691(c) grants some relief from the double taxation by providing that the recipient of income in respect of a decedent may deduct that portion of the estate tax levied on decedent's estate which is attributable to the inclusion of the right to such income in decedent's estate. We concluded therefore in Estate of Robinson v. Commissioner, supra at 226-227:

Congress has focused on the fact that an installment obligation which includes income in respect of a decedent is subject to estate tax as part of the gross estate. To the extent the element of taxable gain included therein is also subject to the income tax, Congress has chosen to ameliorate the impact of this double taxation by allowing an income tax deduction for the estate tax attributable to the taxable gain. There is no foundation in the Code for supplementing this congressional income tax relief by the estate tax relief which petitioner here seeks.

We believe this reasoning is applicable to the instant issue. Section 691(c) provides some relief to the estate from the potential double income tax.[12] Although the estate argues that there is no legislative history on point, the legislative intent is clear from the resulting relief from double income taxation. In Estate of Smith v. United States, 391 F.3d 621 (5th Cir. 2004), the court noted that Congress has not provided similar relief in cases of closely held corporate stock with capital gains potential. In cases involving closely held stock with built-in capital gains, the capital gains tax potential survives the transfer of the stock to an unrelated party, and Congress has not granted any relief from that secondary tax. Id. at 629. Not only does this observation highlight the fundamental

---

[12]We note that the sec. 691(c) deduction does not provide complete relief against the double taxation that is frequently encountered by income in respect of a decedent. Because this section provides a deduction rather than a credit, its value is limited to the highest marginal income tax bracket of the recipient. However, such discrepancy was a congressional choice and is not in our discretion to alter.

difference between transferring closely held corporate stock and stocks in an IRA account that the estate consistently ignores, but it also provides further confirmation of why we should not intervene where Congress has already provided the necessary means to reach a reasonable result.

The estate argues that it is illogical to value the IRAs as though they were equivalent to the value of the underlying assets. To illustrate this point, the estate compares three assets with identical underlying assets: A traditional IRA, a securities account, and a Roth IRA. The estate argues that these three values should not have equal fair market value for Federal estate tax purposes because valuing these assets at the same amount would subject them to the same estate tax when the IRA results in income tax to a beneficiary, and the securities account and Roth IRA would not subject a decedent's beneficiary to tax.[13]

We believe that our analysis of the willing buyer-willing seller test and explanation of the purpose of section 691(c) diminishes the importance of the difference between the tax consequences relating to these assets. Hypothetical buyers and sellers would agree on the same price for each of these items-- the amount of the account balances. We have already illustrated that a hypothetical buyer would not take into account the tax

_____

[13]See secs. 1014, 408A.

consequences of distributing the assets in the IRAs because the buyer would be purchasing the securities, not the IRAs themselves. Unlike the other cases the estate has cited, the tax liability associated with the distribution of the IRAs would not be passed on to the buyer. In addition, section 691(c) provides relief from the double taxation that would be imposed on the benficiaries of the IRAs in this case. In conclusion, the series of comparisons that the estate has crafted to convince us that it is entitled to a reduction in the value of its IRAs for the income tax consequences to the beneficiaries is unconvincing. The correct result in this case is to value the IRAs based on their respective account balances on the date of decedent's death.

Consistent with the preceding discussion, we conclude that petitioner's motion for partial summary judgment will be denied, and respondent's cross-motion for summary judgment will be granted.

To reflect the foregoing,

Decision will be entered

under Rule 155.