T.C. Memo. 2008-285

UNITED STATES TAX COURT

JACOB AND FERN JANKELOVITS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 24615-06.                    Filed December 22, 2008.

Jacob and Fern Jankelovits, pro sese.

<u>Frederick C. Mutter</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>:  Respondent determined a deficiency of $41,244
in petitioners' 2004 Federal income tax.  The issue for decision
is whether petitioners must include in gross income for 2004 the
proceeds from two individual retirement accounts (IRAs)
transferred to petitioner Fern Jankelovits (Mrs. Jankelovits)
during that year.  Unless otherwise noted, all section references

are to the Internal Revenue Code of 1986 as in effect for the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated by this reference.  At the time the petition was filed, petitioners resided in New York.  Petitioners were married and filed a joint Federal income tax return for 2004.

Mrs. Jankelovits inherited two IRAs from her aunt, Miriam Margolis (Ms. Margolis).[1]  The trustee bank for one of the IRAs (Emigrant IRA) was Emigrant Savings Bank in New York, New York, and the trustee bank for the other IRA (Unibank IRA) was Unibank, subsequently known as First Bank Florida, located in Miami, Florida.  The owner of both IRAs had been Ms. Margolis, and petitioner was designated as the accounts' beneficiary upon the death of Ms. Margolis.

Mrs. Jankelovits and petitioner Jacob Jankelovits (Mr. Jankelovits) discussed the IRAs and decided that Mrs. Jankelovits should arrange to have the IRAs transferred to her on a nontaxable basis.

Mrs. Jankelovits met with an employee of the Emigrant Savings Bank on June 10, 2004, presented proof of Ms. Margolis's death, and told the employee that she wished to have the proceeds of her aunt's IRA transferred to her on a nontaxable basis.  The

---

[1]Neither the date of Ms. Margolis's death nor her age at death is established in the record.

employee thereupon transferred the Emigrant IRA balance to an IRA beneficiary account, closed the Emigrant IRA, and issued a check to Mrs. Jankelovits for the $86,004 balance. Mrs. Jankelovits opened a savings account in her name at Washington Mutual Bank in Brooklyn, New York (Washington Mutual account), on the same day and deposited the check there.

Shortly thereafter, Mrs. Jankelovits traveled to Florida and met with an employee of Unibank on June 29, 2004. She likewise instructed the employee to effect a nontaxable transfer of the Unibank IRA, and on that date Mrs. Jankelovits was issued a check for $39,260, representing the balance of the Unibank IRA. Mrs. Jankelovits deposited the check in the Washington Mutual account. Thereafter, up until the time of trial, petitioners did not withdraw any funds from the Washington Mutual account.

Petitioners did not report the amounts transferred from the Emigrant and Unibank IRA accounts as income on their 2004 return.

Respondent thereafter issued petitioners a notice of deficiency for 2004 in which respondent determined that they failed to report $86,004 and $39,260 of taxable retirement income distributions from Emigrant Savings Bank and Unibank, respectively. Petitioners were not aware of any tax problem with respect to the IRAs until they were contacted by respondent in connection with the 2004 deficiency determination.

OPINION

Section 61(a) requires taxpayers to include in gross income all income from whatever source derived. Exclusions from income are to be narrowly construed. Commissioner v. Schleier, 515 U.S. 323, 328 (1995).

Amounts paid or distributed out of an IRA are generally includible in gross income by the payee or distributee.[2] Sec. 408(d)(1). However, section 408(d)(3) provides that a distribution is not includible in gross income if the entire amount of the distribution received by an individual is paid into a qualified IRA for the benefit of that individual within 60 days of the distribution. This recontribution is known as a "rollover contribution". Id. Effective for distributions after December 31, 2001, the Secretary of the Treasury may waive the 60-day requirement when the failure to do so would be against equity and good conscience. Sec. 408(d)(3)(I); Economic Growth and Tax Relief Reconciliation Act of 2001, Pub. L. 107-16, sec 644(b) and (c), 115 Stat. 123.

Rollover treatment is not available in the case of an inherited IRA. Sec. 408(d)(3)(C). An IRA is treated as inherited for purposes of section 408(d)(3)(C) if the individual for whose benefit the account or annuity is maintained acquired

---

[2]Sec. 408(d) provides that such distributions are taxed in the manner provided in sec. 72, which governs the taxation of annuities.

that account by reason of the death of another individual who was not his or her spouse.  Sec. 408(d)(3)(C)(ii).

A taxpayer is not treated as having received a taxable distribution from an IRA if funds in the IRA are transferred from one account trustee directly to another account trustee without the IRA owner or beneficiary ever gaining control or use of the funds.  Rev. Rul. 78-406, 1978-2 C.B. 157; see also Crow v. Commissioner, T.C. Memo. 2002-178; Martin v. Commissioner, T.C. Memo. 1992-331, affd. without published opinion 987 F.2d 770 (5th Cir. 1993).

The funds at issue were transferred from two qualified IRA accounts of Mrs. Jankelovits's deceased aunt to Mrs. Jankelovits because she was the named beneficiary.[3]  Mrs. Jankelovits thereupon deposited the funds into an ordinary savings account. Because the funds were from an inherited IRA, they were ineligible for rollover treatment, leaving trustee-to-trustee transfers as the only basis upon which a nontaxable transfer of the funds could have been effected.[4]

---

[3]While an inheritance is generally acquired tax free, sec. 102(a), a distribution to a beneficiary of an inherited IRA (in excess of any nondeductible contributions of the decedent to the account) is taxed as income in respect of a decedent.  See Estate of Kahn v. Commissioner, 125 T.C. 227, 231-232 (2005).

[4]As noted, the record does not establish Ms. Margolis's age at death, and it is unknown whether required minimum distributions from the two IRA accounts at issue had commenced before her death.  See secs. 408(a)(6), 401(a)(9).

This Court in a few instances has treated imperfect rollover contributions or IRA distributions as if they fully complied with the statute where the taxpayer had acted with full knowledge of the law's requirements, had taken all steps within his reasonable control to comply with those requirements, and had achieved substantial compliance. See Wood v. Commissioner, 93 T.C. 114 (1989); Childs v. Commissioner, T.C. Memo. 1996-267; Thompson v. Commissioner, T.C. Memo. 1996-266.

In Wood, the taxpayer husband, well before expiration of the 60-day period allowed for a rollover, had established an IRA trust account at a financial institution, had deposited with the institution certain cash and stock certificates distributed to him from a qualified plan, and had instructed the institution to transfer the cash and stock into the IRA account. He had been assured by the institution that the transfer would be effected. On the institution's books, the cash was recorded as having been transferred to an IRA account within the 60-day rollover period, but the stock was not. When the institution discovered that the stock was recorded as deposited in a non-IRA account some 4 months after expiration of the rollover period, it promptly made corrective entries on its books so that the stock was recorded as deposited into the IRA account.

We concluded in Wood that the institution's failure to record the stock as deposited into the IRA account before expiration of the rollover period was merely a bookkeeping error

that was not disqualifying. Instead, the substance of the transaction between the taxpayer and the financial institution controlled; since the institution had accepted and held the stock subject to the IRA trust instrument executed by the taxpayer, and the taxpayer had taken reasonable steps to establish an IRA rollover account and to transfer the cash and stock to that account in a timely manner, the taxpayer had in substance complied with the statute and was entitled to rollover treatment notwithstanding the institution's bookkeeping error. See also Childs v. Commissioner, supra (following Wood, untimely distribution of excess IRA contributions treated as timely where taxpayer took all reasonable steps to comply with the statute and the failure to meet the statutory deadline was attributable to error of the taxpayer's financial institution); Thompson v. Commissioner, supra (to same effect).

However, more frequently, in a line of cases starting with Schoof v. Commissioner, 110 T.C. 1 (1998), we have denied any relief for defective rollovers or transfers where the defect related to a "fundamental element of the statutory requirements" rather than "the procedural defects in the execution of the rollover" found in Wood. Schoof v. Commissioner, supra at 11; see also Atkin v. Commissioner, T.C. Memo. 2008-93; Dirks v. Commissioner, T.C. Memo. 2004-138, affd. 154 Fed. Appx. 614 (9th Cir. 2005); Crow v. Commissioner, supra; Anderson v. Commissioner, T.C. Memo. 2002-171; Metcalf v. Commissioner, T.C.

Memo. 2002-123, affd. 62 Fed. Appx. 811 (9th Cir. 2003). The same principle has been extended to a trustee-to-trustee transfer under Rev. Rul. 78-406, supra. Crow v. Commissioner, supra.

In Schoof v. Commissioner, supra, the defect in the "fundamental element" was that the transferee accounts into which the IRA funds were rolled over were not qualified IRA accounts (because the purported trustee of those accounts was unqualified to act as such). The transfers to defective IRA accounts were therefore ineligible as rollover contributions, rendering the transferred amounts taxable. Id. at 10.

In Crow, the defect in the "fundamental element" was likewise the failure to transfer IRA account proceeds into another qualified IRA account. The taxpayer had withdrawn the entire balance of an IRA account at his bank in 1998. The amount withdrawn was transferred to a nonqualified annuity administered by an insurance company. Although he received a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., reporting that the entire amount withdrawn was taxable, the taxpayer took no action in response and did not report the amount on his 1998 return. When contacted by the Internal Revenue Service (IRS) in 2000 regarding the IRA withdrawal, the taxpayer conferred with the bank, and in 2001 the bank took steps to recharacterize the transaction. The bank prepared documents stating that there had been a bank error and that the IRA account had been mistakenly

closed out and should have been closed as a trustee transfer. The bank also issued a revised Form 1099-R reporting that none of the distribution was taxable and a "Correction Worksheet" stating that "[t]his was to have been a trustee transfer to * * * [an IRA annuity], not a distribution" of the account proceeds. Nonetheless, approximately a year later in March 2002, at the time of trial, the withdrawn proceeds remained in the nonqualified annuity to which they had been transferred in 1998.

We rejected Mr. Crow's argument that he should obtain relief under Wood. He contended that the transferor bank either had mistakenly rolled over the funds into a nonqualified annuity or had mistakenly rolled over the funds instead of making a trustee-to-trustee transfer to an IRA or other qualified plan. Instead, emphasizing the fundamental nature of the requirement that IRA funds be transferred into an IRA or other qualified plan and the failure to correct the defect in a timely manner, we held that the IRA funds withdrawn were includible in income.

> A fundamental requirement for a rollover contribution under section 408(d)(3) or a trustee-to-trustee transfer under Rev. Rul. 78-406 * * * is that funds actually be rolled over or transferred into an IRA or other qualified plan. We believe that failure of this fundamental requirement extends beyond the procedural error in Wood v. Commissioner * * * which was cured by substantial compliance and the fulfilment of the remaining requirements of the statute. Thus, like the situation in Schoof v. Commissioner, * * * we find that the failure to roll over or transfer the funds to an IRA or other qualified plan is fatal to petitioner's case. * * * [Crow v. Commissioner, T.C. Memo. 2002-178.]

Similarly, in <u>Anderson v. Commissioner</u>, <u>supra</u>, the taxpayer-husband withdrew funds from an IRA account and used them to purchase certificates of deposit in his and the taxpayer-wife's names, pursuant to documents that did not mention the creation of either an IRA account or other trust account.  Emphasizing that the taxpayers had neither established nor instructed the transferee bank officer to establish a valid IRA or trust account and that the failure to establish such an account to receive the transferred funds "'involves the failure of a fundamental element of the statutory requirements for an IRA rollover contribution'", <u>id.</u> (quoting <u>Schoof v. Commissioner</u>, <u>supra</u>), we rejected the taxpayers' reliance on <u>Wood v. Commissioner</u>, 93 T.C. 114 (1989), and held that the withdrawn funds were includible in income.

The evidence in this case is sparse.  Mr. Jankelovits testified that he counseled his wife to request a nontaxable transfer of the IRA funds, but he conceded that he did not become aware of trustee-to-trustee transfers until he consulted an IRS publication after being contacted by respondent concerning petitioners' 2004 return.  Mrs. Jankelovits testified that she visited each bank and followed her husband's advice by informing bank employees that she wanted the funds transferred to her on a nontaxable basis.  It is undisputed that in June 2004 each bank issued her a check for the balance in the IRA account that each held, and that Mrs. Jankelovits promptly deposited the checks in an ordinary savings account in a third, more conveniently located

bank, where they remained untouched for over 3 years until the time of trial.  Neither of the transferor banks has conceded any error.[5]  Petitioners offered no testimony concerning what, if anything, Mrs. Jankelovits told the transferee bank concerning the deposited funds.

The foregoing facts are sufficient to place this case outside the Wood line of cases and instead put it squarely under the caselaw treating IRA distributions as taxable when they do not conform with fundamental elements of the statutory requirements for an exclusion from gross income.  Even if we accept petitioners' version of their dealings with the transferor banks and assume that the banks' employees misunderstood or misapplied Mrs. Jankelovits's instructions,[6] we would conclude that respondent is entitled to prevail.

_____

[5]Officers at each bank wrote letters in April 2006, the authenticity of which the parties have stipulated.  The letters provide very general, after-the-fact, and self-serving descriptions of the withdrawals.  The letters are hearsay, and we accord little weight to them.

[6]Assuming Mrs. Jankelovits instructed the transferor banks in general terms that she wanted to move the inherited IRAs on a nontaxable basis to a more conveniently located bank, the bank employees could have failed to appreciate the necessity of a trustee-to-trustee transfer when dealing with an inherited IRA, since rollover treatment is not available for an IRA in that status.  (Petitioners have conceded they were unaware of trustee-to-trustee transfers at the time.)  Possibly the employees assumed, contrary to sec. 408(d)(3)(C), that a nontaxable rollover of Mrs. Jankelovits's inherited IRA accounts could be made.  Accordingly, they could have believed that the distribution of the funds directly to Mrs. Jankelovits was nontaxable so long as she redeposited the funds in a qualified account within the 60-day rollover period.

As noted, the IRAs in Mrs. Jankelovits's hands were "inherited" within the meaning of section 408(d)(3)(C), rendering them ineligible for nontaxable rollover treatment.[7] See sec. 408(d)(3)(A). Even if petitioners and the two transferor banks' personnel were unaware of this restriction and thought that a nontaxable rollover could be effected, it remains the case that there is no evidence that petitioners made any effort to establish an IRA at the transferee bank. Mrs. Jankelovits offered no testimony concerning what, if anything, she told the transferee bank about the funds she deposited into the savings account she established there. The lack of an IRA account at the transferee bank to receive the transferred funds undermines the claim that a nontaxable rollover or trustee-to-trustee transfer should be deemed to have occurred in these circumstances. Neither petitioner explained how he or she could have supposed that the transferred money retained its character as nontaxable IRA funds while sitting in an ordinary savings account;[8] they

_____

[7]We note that since sec. 408(d)(3)(C) denies the benefit of the rollover contribution "paragraph" to inherited IRAs, the Secretary's authority under sec. 408(d)(3)(I) to waive the 60-day rollover period has no application in this case because, under the latter section, only "subparagraphs" (A) or (D) of sec. 408(d)(3) may be waived.

[8]Although the record is silent regarding whether distributions to Ms. Margolis had begun before her death, Mrs. Jankelovits, as the designated beneficiary of Ms. Margolis's IRAs, would have been required to commence receiving taxable distributions from the IRAs after Ms. Margolis's death. See generally secs. 408(a)(6), 401(a)(9); sec. 1.408-8, Income Tax Regs.

merely blamed the transferor banks for not effecting a nontaxable distribution.

Petitioners' circumstances are readily distinguishable from those of the taxpayers in Wood.  In Wood, the taxpayer-husband had established an IRA account to receive a rollover distribution and had sufficient knowledge of the statute's requirements to enable him to give instructions to the financial institution that, if followed, would have produced full compliance with the statute.  There is no evidence that Mrs. Jankelovits attempted to establish an IRA account to receive the funds from her deceased aunt's IRAs.  She did not give detailed instructions that would have resulted in nontaxable transfers if followed, as she and Mr. Jankelovits were unaware of trustee-to-trustee transfers when the distributions were made.

Instead, petitioners' circumstances are much closer to those of the taxpayer in Crow v. Commissioner, T.C. Memo. 2002-178.  The taxpayer in Crow sought relief on the grounds that the transferor bank had mistakenly failed to make a trustee-to-trustee transfer.  Even though the transferor bank in Crow conceded error in handling the taxpayer's transaction (unlike the transferor banks here), we denied any relief because the funds had been transferred to a nonqualified account and had remained in that account without any timely corrective action.  In Crow, the failure to transfer the funds to a qualified account was a defect in a "fundamental requirement" that precluded relief,

notwithstanding any mistakes by the transferor bank. Petitioners' claim that a trustee-to-trustee transfer was intended is likewise unavailing, because the funds at issue were transferred to a nonqualified account and remained there approximately 3 years up until the time of trial. In addition, petitioners' failure to show that the transferee bank received any instructions from them to the effect that the deposited funds should be placed in an IRA account also militates against relief. In Anderson v. Commissioner, T.C. Memo. 2002-171, we denied any relief with respect to a transfer of IRA funds to a nonqualified account, emphasizing the taxpayers' failure to instruct the transferee bank to establish an IRA account. In sum, the fact that the funds at issue were transferred to a nonqualified account, without any instructions to the transferee bank regarding establishment of an IRA account to hold them, and remained there until the time of trial, precludes relief for petitioners.

We therefore hold that the amounts transferred to Mrs. Jankelovits from the Emigrant and Unibank IRAs are includible in petitioners' gross income in 2004.

To reflect the foregoing,

Decision will be entered

for respondent.