T.C. Memo. 2016-228

UNITED STATES TAX COURT

SUZANNE D. OSTER OZIMKOSKI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3622-11.               Filed December 19, 2016.

Suzanne D. Oster Ozimkoski, pro se.

<u>Jeremy D. Cameron</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  Respondent determined a deficiency in Federal income tax

of $62,185, a failure to timely file addition to tax under section 6651(a)(1) of

[*2] $3,100, and an accuracy-related penalty under section 6662(a) of $12,437 for 2008.[1]

The issues for decision are whether: (1) petitioner's individual retirement account (IRA) distributions totaling $174,597.17 are taxable income to her; (2) petitioner's IRA distributions are subject to the section 72(t) 10% additional tax; (3) petitioner is liable for the section 6651(a)(1) addition to tax; and (4) petitioner is liable for the section 6662(a) accuracy-related penalty.

## Background

This case was submitted on the pleadings and stipulated facts under Rule 122. The stipulation of facts, the supplemental stipulation of facts, the second supplemental stipulation of facts, the third supplemental stipulation of facts, and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Florida when she timely filed her petition.

In 2006 petitioner was married to Thomas W. Ozimkoski, Sr., who was born on November 10, 1944, and died in August 2006.[2] On February 15, 2006, Mr.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Circuit Court for Volusia County, Florida, Probate Division, showed Mr. Ozimkoski, Sr.'s date of death as August 4, 2006, in its order admitting will to

(continued...)

[*3] Ozimkoski, Sr., executed a simple, two-page last will and testament that left all of his property, with the exception of some tangible personal property,[3] to petitioner and named her as personal representative of his estate.[4] At the time of his death, Mr. Ozimkoski, Sr., owned a traditional IRA with Wachovia Securities.[5] [6]

---

[2](...continued)
probate but showed his date of death as August 5, 2006, in its order of summary administration. Mr. Ozimkoski, Sr.'s original death certificate was not an exhibit in this case.

[3]The tangible personal property was devised by a separate writing referenced in the will. The separate writing offered into evidence was neither signed nor dated.

[4]The Court notes that the same small, local "full service law firm" that drafted Mr. Ozimkoski, Sr.'s simple will represented petitioner as the personal representative of his estate and counseled her through the subsequent probate litigation and eventual settlement agreement entered into between petitioner and Mr. Ozimkoski, Jr., which concluded that litigation.

[5]Wachovia Securities is the trade name used by two separate, registered broker-dealers and nonbank affiliates of Wachovia Corp. providing certain retail securities brokerage services: Wachovia Securities, LLC, Member NYSE/SIPC, and Wachovia Securities Financial Network, LLC, Member FINRA/SIPC. The Court will refer to Wachovia Securities and its affiliates as Wachovia.

[6]Wells Fargo & Co. acquired Wachovia on December 31, 2008. The nonbank brokerage subsidiary of Wells Fargo & Co. is now called Wells Fargo Advisors. The trade name for the capital markets and investment banking services of Wells Fargo & Co. and its subsidiaries is now called Wells Fargo Securities. The Court will refer to Wells Fargo & Co. and any of its subsidiaries as Wells Fargo.

**[*4]** In 2006 during the probate proceedings for Mr. Ozimkoski, Sr.'s estate, Mr. Ozimkoski, Jr., one of his adult children and petitioner's stepson, filed two petitions with the probate court--one for revocation of Mr. Ozimkoski, Sr.'s will and one for declaratory relief. Wachovia froze Mr. Ozimkoski, Sr.'s traditional IRA pending the outcome of the probate litigation.

On March 7, 2008, petitioner and Mr. Ozimkoski, Jr., reached a settlement agreement through mediation. They agreed to the following:

> Respondent [Mrs. Ozimkoski] shall pay to petitioner [Mr. Ozimkoski, Jr.] the sum of $110,000 and shall transfer title to petitioner [Mr. Ozimkoski, Jr.] to that certain 1967 Harley Davidson motorcycle in full and final settlement of all claims raised or which could have been raised in this action. Payment shall be made within 30 days of the date on which decedent's IRA is unfrozen by Wachovia Securities. All payments shall be net payments free of any tax.

After agreeing to the terms of the settlement agreement, Mr. Ozimkoski, Jr., withdrew both of his motions pending before the probate court.

The intricacies of the payment required under the settlement agreement were gleaned from Mr. Ozimkoski, Sr.'s IRA account records. Wells Fargo delivered those records after a series of subpoenas were served. The account records included journal entries by Wachovia representatives. In an April 24, 2008, journal entry, Wachovia's manager of estate processing wrote that she had informed petitioner and petitioner's attorney that she would need a certified copy

**[*5]** of the agreement from the court and a letter from petitioner stating exactly how to divide Mr. Ozimkoski, Sr.'s IRA account to accommodate the order. The manager also noted that she had told petitioner's attorney that Mr. Ozimkoski, Jr., had called and told a different Wachovia representative that he did not want an inherited IRA. The manager noted that she had relayed the substance of Mr. Ozimkoski, Jr.'s phone conversation to petitioner's attorney because "even with a certified agreement from the courts [sic] being provided to Wachovia we cannot honor one line in the agreement '[a]ll payments shall be net payments free of any tax.'" The manager noted that petitioner's attorney stated that he understood that someone was going to have "a tax implication" and that he would get back to her.

In a June 12, 2008, journal entry, the manager noted that she had spoken with petitioner and a vice president of Wachovia. She noted that petitioner had stated that she was working with her attorney to get Mr. Ozimkoski, Jr.'s signature on the division of assets. She further noted that once petitioner and Mr. Ozimkoski, Jr., agreed on the division of assets, petitioner would let the vice president know how to proceed. There are no other journal entries from the manager in the record after her June 12, 2008, entry. The next journal entry in the record, dated July 2, 2008, is from a Wachovia employee and states that there was

[*6] a "[transfer] to spouse [sic] own IRA" with a comment that the transfer was "per * * * [Wachovia's manager of estate processing]".

On July 2, 2008, Wachovia transferred $235,495.46 from Mr. Ozimkoski, Sr.'s IRA to petitioner's traditional IRA, which was also with Wachovia.[7][8] On July 14, 2008, petitioner received a distribution of $141,997.43 from her IRA. On July 15, 2008, petitioner wrote a personal check for $110,000 to Mr. Ozimkoski, Jr., to make the payment required under the settlement agreement. Petitioner also received the following distributions from her IRA in 2008: (1) $20,099.74 on August 14, (2) $12,000 on December 4, and (3) $500 on December 15, for total distributions of $174,597.17.

In 2009 Wachovia issued a Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc, with respect to the distributions from petitioner's IRA for 2008. The distribution code 1 on the Form 1099-R represented that the distributions were early

---

[7]No documentation showing when petitioner had opened her IRA was provided to the Court, but it appears on the basis of the account activity record that petitioner opened an IRA with no balance in October 2006, several months after Mr. Ozimkoski, Sr., died.

[8]The exact date Wachovia unfroze the IRA assets is not in the record.

**[*7]** distributions with no known exception because petitioner had not reached the age of 59-1/2 in 2008.[9]

On May 9, 2009, petitioner untimely filed a Form 1040, U.S. Individual Income Tax Return, for 2008. Petitioner reported wage income from the Boys and Girls Club of Volusia of $14,960 on her return but did not report any of the IRA distributions as income for 2008.

On November 22, 2010, respondent issued a notice of deficiency to petitioner for 2008, determining an income tax deficiency of $62,185, which included a section 72(t) additional tax of $17,460 for an early withdrawal from a retirement account, a section 6651(a)(1) addition to tax of $3,100 for failure to timely file an income tax return, and a section 6662(a) accuracy-related penalty of $12,437 for an underpayment attributable to a substantial understatement of income tax. Petitioner timely filed a petition with this Court challenging the notice of deficiency.

## Discussion

I.   Burden of Proof

Generally, the Commissioner's determination of a deficiency is presumed correct, and the taxpayer bears the burden of proving it incorrect. See Rule

---

[9]Petitioner was born in 1955 and was 53 years old in 2008.

[*8] 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer produces credible evidence with respect to any relevant factual issue and meets other requirements.  No determination whether there should be a burden shift is necessary because the Court's decision is based on the preponderance of the evidence.

II.     IRA Distributions Generally Includible in Gross Income

Section 61(a) provides that "gross income means all income from whatever source derived".  Section 408(d)(1) provides that, "[e]xcept as otherwise provided in this subsection, any amount paid or distributed out of an individual retirement plan shall be included in gross income by the payee or distributee".  Section 408(d) provides several exceptions to this rule--e.g., for rollover contributions, transfers incident to divorce, and distributions for charitable purposes.  <u>See</u> sec. 408(d)(3), (6), (8).  An IRA owner can designate beneficiaries to inherit his IRAs in the event that the owner dies before receiving all of the IRA distributions, but there is no exception from inclusion in gross income for distributions to a beneficiary following the death of the account owner.  Therefore, distributions to beneficiaries of a decedent are includible in the gross income of the

[*9] beneficiaries.[10]  See Estate of Kahn v. Commissioner, 125 T.C. 227, 231-232 (2005) (citing sections 408(d)(1) and 691(a)(1)(B)).

If an IRA owner dies before distributions were required to begin, the owner's interest in the IRA generally must be distributed to the beneficiary within five years of the decedent's death.  Secs. 401(a)(9)(B)(iii), 408(a)(6). Additionally, if an IRA owner dies before distributions were required to begin and the named beneficiary is the decedent's estate, the assets must be distributed within five years of the decedent's death.[11]  Id.  If an IRA owner dies after distributions were required to begin, the IRA assets generally must be distributed to the beneficiary of the IRA at least as rapidly as under the method of distribution to the owner.  Sec. 401(a)(9)(B)(i).

On July 2, 2008, after Wachovia unfroze the IRA assets, it transferred $235,495.46 from Mr. Ozimkoski, Sr.'s IRA to petitioner's traditional IRA, which

---

[10]Section 102(a) excludes from gross income "the value of property acquired by gift, bequest, devise, or inheritance."  While an inheritance is generally acquired tax free under sec. 102(a), the same is not true for distributions from inherited IRAs.

[11]Estates are taxed at a rate different from the rate that applies to individuals. See sec. 1(e).

[*10] was also with Wachovia.[12]  Petitioner then received distributions from her IRA totaling $174,597.17 in 2008.  Petitioner argued that the distributions should not be included in her income because Mr. Ozimkoski, Jr., was entitled to $110,000 of Mr. Ozimkoski, Sr.'s IRA through the probate litigation and the ensuing settlement agreement.[13]  Respondent argued that the distributions are taxable to petitioner because they were from her own IRA.

Generally, an IRA payable to a specific beneficiary, other than the decedent's estate, is not a probate asset and is not included in the decedent's probate estate.  The Court notes that under Florida law there appear to be only two scenarios in which Wachovia could properly freeze Mr. Ozimkoski, Sr.'s IRA assets during the pendency of probate litigation.  If there had been a named beneficiary for his IRA the funds would have been paid to the trustee of the account and then distributed according to the terms of the IRA.  See Fla. Stat. Ann. sec. 733.808(1) (West 2010).  If no proper claim was made on the IRA

---

[12]This amount was for all intents and purposes the entire amount of Mr. Ozimkoski, Sr.'s IRA.  According to emails between Wachovia's employees, a small amount of "loose cash" not included in the July 2, 2008, transfer was also transferred to petitioner's IRA.

[13]The Court posits petitioner's argument from her pro se petition, which should be broadly construed.  See Rule 31(d); Gray v. Commissioner, 138 T.C. 295, 302 n.7 (2012) (citing Haines v. Kenner, 404 U.S. 519, 520 (1972)).

[*11] proceeds within six months of Mr. Ozimkoski, Sr.'s death, the proceeds would have been paid to his personal representative.[14] See id. at (3). Therefore, under Florida law the only two scenarios in which Wachovia could have correctly frozen Mr. Ozimkoski, Sr.'s IRA pending the outcome of the probate litigation were that: (1) his estate was the named beneficiary of the IRA or (2) there was no named beneficiary of the IRA. The Court has not found and neither party has provided any authority to the contrary.

Under either scenario Wachovia incorrectly rolled over the entirety of Mr. Ozimkoski, Sr.'s IRA to petitioner's IRA. An IRA beneficiary designation cannot be reformed after the IRA owner dies. Sec. 1.401(a)(9)-4, A-4(a), Income Tax Regs. ("In order to be a designated beneficiary, an individual must be a beneficiary as of the date of death."). The Court finds that petitioner was not a named beneficiary of Mr. Ozimkoski, Sr.'s IRA on the date of his death and therefore cannot be named a designated beneficiary after his death.

Under Florida law Wachovia should have distributed the IRA assets to Mr. Ozimkoski, Sr.'s estate because either it was named as the beneficiary or there was

---

[14]Respondent issued a subpoena duces tecum to Wells Fargo, see supra note 6, requesting Mr. Ozimkoski, Sr.'s IRA beneficiary designation form and all related account documents. See supra p. 4. After a hearing on the Court's order directing Wells Fargo, N.A. to show cause, it was determined that Wells Fargo did not have Mr. Ozimkoski, Sr.'s IRA beneficiary designation form.

[*12] no named beneficiary and because the settlement agreement makes no direction as to the disposition of the IRA. Although the Court finds that Wachovia incorrectly rolled over Mr. Ozimkoski, Sr.'s IRA to petitioner's IRA, the Court has no jurisdiction to unwind that transaction and must decide petitioner's tax liability on the basis of Wachovia's erroneous transfer of Mr. Ozimkoski, Sr.'s IRA assets to her IRA and the subsequent distributions from her IRA.

Once the IRA assets had been transferred to petitioner's IRA, she requested a distribution and wrote a check from her personal checking account to Mr. Ozimkoski, Jr., to make the payment required per the settlement agreement, which was incorporated into the circuit court's order of summary administration.[15] Petitioner was represented by counsel during the probate litigation and the negotiations that led to the settlement agreement. Wachovia's employee journal notes state that petitioner's probate attorney understood that someone would have to pay income tax on the $110,000 allocated to Mr. Ozimkoski, Jr., under the terms of the settlement agreement.[16]

---

[15]Under Florida law summary administration is appropriate for an estate whose total value, less the value of property exempt from claims of creditors, does not exceed $75,000 or when the decedent has been deceased for more than two years. See Fla. Stat. Ann. sec. 735.201(2) (West 2010).

[16]It is not clear from the record whether petitioner's probate attorney

(continued...)

[*13] The settlement agreement required payment of the $110,000 within 30 days after Wachovia unfroze Mr. Ozimkoski, Sr.'s IRA. Petitioner's wage income for 2008 was less than $15,000. Although petitioner inherited real property from Mr. Ozimkoski, Sr., no proof of the property's value was entered into evidence. It is unclear from the record before the Court how petitioner's probate attorney counseled her to comply with the payment obligation under the settlement agreement--as the personal representative of Mr. Ozimkoski, Sr.'s estate, as an IRA beneficiary, or as a surviving spouse. What is clear from the record before the Court is that petitioner's probate attorney failed to counsel her on the full tax ramifications of paying Mr. Ozimkoski, Jr., $110,000 from her own IRA. While the Court is sympathetic to petitioner's argument, the distributions she received were from her own IRA and therefore are considered taxable income to her for

---

[16](...continued)
included Mr. Ozimkoski, Sr.'s estate as a possible bearer of the tax burden or only his client or Mr. Ozimkoski, Jr.

[*14] 2008.[17]  See secs. 61(a), 408(d)(1); Estate of Kahn v. Commissioner, 125 T.C. at 231.

III.    Section 72(t) Additional Tax

Generally, amounts distributed from an IRA are includible in gross income as provided in section 72.  Sec. 408(d)(1).  Section 72(t)(1) provides for a 10% additional tax on an early distribution from a qualified retirement plan unless the distribution falls within a statutory exception.  The relevant exception is found in section 72(t)(2)(A)(ii), which provides that distributions "made to a beneficiary (or to the estate of the employee) on or after the death of the employee" are not subject to the 10% additional tax.

The Court has previously held that a beneficiary loses the entitlement to claim the exception under section 72(t)(2)(A)(ii) if the beneficiary rolls over the funds from the deceased spouse's IRA into his or her IRA and thereafter withdraws funds from his or her IRA.  See Gee v. Commissioner, 127 T.C. 1, 4-5 (2006); see also Sears v. Commissioner, T.C. Memo. 2010-146.

_____

[17]Petitioner's only argument was that the distributions should not be included in her income because of the terms of the settlement agreement.  Her argument concerns only the $110,000 paid to Mr. Ozimkoski, Jr.  No argument was made concerning the remaining distributions petitioner received in 2008; therefore, the Court deems petitioner to have conceded that those amounts are includible in her gross income for 2008.  See Rule 34(b); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986).

[*15] In Gee v. Commissioner, 127 T.C. at 2, the taxpayer rolled over a distribution from her deceased husband's IRA into her separate IRA upon her husband's death. Four years later, the taxpayer received a distribution from her IRA. Id. at 2-3. She claimed that the distribution was an amount received from her deceased husband's IRA and therefore exempt from the 10% additional tax on early distributions under section 72(t)(2)(A)(ii) as a distribution to a beneficiary upon a decedent's death. Id. at 3. The Court did not agree and instead held that when the beneficiary rolls over funds from the deceased spouse's IRA into her own IRA, the funds become the beneficiary's own and any subsequent distributions are no longer occasioned by the death of the spouse. Id. at 4-5. The Court reasoned that the amount received from the taxpayer's deceased husband's IRA lost its character as a distribution made to a beneficiary upon a decedent's death once the taxpayer transferred the funds to her separately owned IRA. Id. Thus, such distributions do not qualify for the section 72(t)(2)(A)(ii) exception. See id. at 4-5.

In Sears v. Commissioner, T.C. Memo. 2010-146, the taxpayer's husband died in 1998, leaving his wife as the primary beneficiary of his IRA. Id. at 1. In March 1999 the taxpayer withdrew $442,863.87 from her deceased husband's IRA and transferred it into one of her IRAs. Id. at 10. Additionally, in 2006 the

[*16] taxpayer withdrew a total of $60,937 from three of her IRAs and reported that amount to the IRS but did not report the 10% additional tax pursuant to section 72(t) for an early withdrawal from an IRA. Id. at 4-5. The Commissioner determined that the taxpayer had made early withdrawals from her IRAs and assessed an additional $6,093 in Federal income tax for 2006. Id. at 1.

The taxpayer challenged the determination, claiming that the amounts she withdrew from her deceased husband's IRA and placed in her IRA were exempt from the early withdrawal penalty under section 72(t)(2)(A)(ii), even though she withdrew those amounts from her IRA before she reached age 59-1/2. Id. at 6.

The Court did not agree and instead held that the taxpayer lost the entitlement to claim the exception under section 72(t)(2)(A)(ii) when she knowingly withdrew the funds from her deceased husband's IRA by making distribution requests and directed the distributions into her account. Id. at 15. Accordingly, the subsequent distributions of those funds were not occasioned by the death of the taxpayer's husband and were not made to her in her capacity as beneficiary of his IRA. Id. at 10.

Mr. Ozimkoski, Sr., died in August 2006. His IRA was frozen during the probate proceeding of his estate and was unfrozen after petitioner and Mr. Ozimkoski, Jr., signed a settlement agreement dated March 7, 2008. The record

**[\*17]** does not reflect the exact date Wachovia unfroze Mr. Ozimkoski, Sr.'s IRA, but as of June 12, 2008, Wachovia was aware of the settlement agreement and was awaiting a decision from petitioner and Mr. Ozimkoski, Jr., as to how to handle the IRA. On June 12, 2008, the Wachovia manager noted that petitioner and Mr. Ozimkoski, Jr., would agree on how to distribute the balance of Mr. Ozimkoski, Sr.'s IRA and would inform Wachovia on how to proceed. On July 2, 2008, Wachovia transferred $235,495.46 from Mr. Ozimkoski, Sr.'s IRA into petitioner's IRA. Petitioner then took distributions on July 14 of $141,997.43, August 14 of $20,099.74, December 4 of $12,000, and December 15 of $500, all of which were before she reached the age of 59-1/2.

The Court made clear in <u>Gee</u> that once the assets in the decedent's IRA were transferred into the taxpayer's IRA, any subsequent distributions were no longer occasioned by the decedent's death and were not made to the taxpayer as a beneficiary of the decedent; therefore, the exception under section 72(t)(2)(A)(ii) did not apply. The cases <u>Gee</u> and <u>Sears</u> control here, and the exception in section 72(t)(2)(A)(ii) does not apply.[18] Therefore, the Court finds that petitioner is liable

---

[18]The Court notes that if Mr. Ozimkoski, Sr.'s IRA assets had been transferred to his estate and then distributed to petitioner (because the estate was the named beneficiary or because there was no named beneficiary, <u>see</u> <u>supra</u> pp. 10-12), she would have received the distribution as a beneficiary of the decedent

(continued...)

**[*18]** for the section 72(t) additional tax for early withdrawals for the distributions from her IRA for 2008.

IV.    Section 6651(a)(1) Addition to Tax for Failure To Timely File

Section 6651(a)(1) imposes an addition to tax for failure to timely file a Federal income tax return unless it is shown that the failure is due to reasonable cause and not due to willful neglect.  The addition to tax is equal to 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.  Id.

The Commissioner bears the burden of production with respect to any penalty or addition to tax.  Sec. 7491(c).  Petitioner filed her 2008 Federal income tax return on May 9, 2009, 24 days after the due date.  Therefore, respondent has met his burden of production under section 7491(c).  The burden of proof thus shifts to petitioner.

A taxpayer is not liable for an addition to tax for failure to timely file if she shows the untimeliness is due to reasonable cause and not due to willful neglect.

---

[18](...continued)
and would have been personally subject to the income tax in respect of the decedent's tax liability, but the sec. 72(t)(2)(A)(ii) exception would have applied to the distribution.

**[\*19]** Sec. 6651(a)(1); Higbee v. Commissioner, 116 T.C. 438, 447 (2001). "If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time, then the delay is due to a reasonable cause." Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. The taxpayer can show that she did not act with "willful neglect" if she can "prove that the late filing did not result from a 'conscious, intentional failure or reckless indifference.'" Niedringhaus v. Commissioner, 99 T.C. 202, 221 (1992) (quoting United States v. Boyle, 469 U.S. 241, 245-246 (1985)).

Petitioner's only explanation for her delay in filing her 2008 Federal income tax return centered around her role as the personal representative of Mr. Ozimkoski, Sr.'s estate and that she was overwhelmed by circumstances surrounding the will contest. While the Court is sympathetic to petitioner's situation, it has held that litigation is not reasonable cause for untimely filing a Federal income tax return. See Estate of Duttenhofer v. Commissioner, 49 T.C. 200 (1967), aff'd, 410 F.2d 302 (6th Cir. 1969); Dunne v. Commissioner, T.C. Memo. 2008-63. Therefore, the Court finds that petitioner is liable for the addition to tax under section 6651(a)(1).

**[*20]** V.     Accuracy-Related Penalty Under Section 6662(a)

Section 6662(a) and (b)(2) authorizes a 20% penalty on the portion of an underpayment of income tax attributable to a substantial understatement of income tax.  There is a "substantial understatement" of income tax for any year if the amount of the understatement for the taxable year exceeds the greater of 10% of the tax required to be shown on the tax return or $5,000.  Sec. 6662(d)(1)(A); Higbee v. Commissioner, 116 T.C. at 448.

As stated supra p. 17, under section 7491(c) the Commissioner bears the burden of production with regard to penalties.  Higbee v. Commissioner, 116 T.C. at 446.  Once the Commissioner has met the burden of production, the taxpayer has the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority.  See Rule 142(a); Longino v. Commissioner, 593 F. App'x 965, 970 (11th Cir. 2014), aff'g T.C. Memo. 2013-80; Higbee v. Commissioner, 116 T.C. at 446-447.  Respondent has met his burden here.

No penalty may be imposed under section 6662 with respect to any portion of an underpayment upon a showing that the taxpayer acted with reasonable cause and in good faith with respect to that portion.  Sec. 6664(c)(1).  Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to

[*21] the disputed item. Sampson v. Commissioner, T.C. Memo. 2013-212. The term "good faith" has no precise definition but means, among other things: (1) an honest belief and (2) the intent to perform all lawful obligations. Id. at *18. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. See Higbee v. Commissioner, 116 T.C. at 448; Sampson v. Commissioner, T.C. Memo. 2013-212. Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability. Sec. 1.6664-4(b)(1), Income Tax Regs.; see also Remy v. Commissioner, T.C. Memo. 1997-72. An honest misunderstanding of fact or law in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer, may indicate reasonable cause and good faith. Sec. 1.6664-4(b)(1), Income Tax Regs.

### A. The $110,000 Paid to Mr. Ozimkoski, Jr., Under the Terms of the Settlement Agreement

The settlement agreement states that the payment to Mr. Ozimkoski, Jr., to settle his lawsuits against Mr. Ozimkoski, Sr.'s estate was to be paid within 30 days of Wachovia's unfreezing Mr. Ozimkoski, Sr.'s IRA. On July 15, 2008, one day after receiving a distribution from her IRA large enough to make the payment,

[*22] petitioner wrote a check from her personal checking account for $110,000 to Mr. Ozimkoski, Jr.

Petitioner worked full time for the Boys and Girls Club of Volusia and earned wage income of less than $15,000 for the year in issue. She was not knowledgeable in the areas of probate administration or tax law. After settling Mr. Ozimkoski, Jr.'s lawsuits against Mr. Ozimkoski, Sr.'s estate, petitioner concluded her duties as the personal representative of the estate, and the terms of the settlement agreement were incorporated into the probate order. She complied with the settlement agreement by taking a distribution from her IRA to make the payment to Mr. Ozimkoski, Jr. Petitioner had the additional $110,000 in her IRA because Wachovia incorrectly transferred the entirety of Mr. Ozimkoski, Sr.'s IRA to her instead of to his estate. In light of all the circumstances, including her experience, knowledge, and education, the Court finds that petitioner had reasonable cause for, and acted in good faith with respect to, the portion of her underpayment attributable to her failure to include in her taxable income for 2008 the $110,000 she paid to Mr. Ozimkoski, Jr., under the settlement agreement and that was incorporated into the probate court order. Therefore, under the facts and circumstances here, the Court finds that petitioner is not liable for the accuracy-

**[*23]** related penalty for the portion of her underpayment attributable to $110,000 of her IRA distributions for 2008.

B.     Petitioner's Remaining IRA Distributions for 2008

Petitioner took additional IRA distributions of $64,597.17 in 2008. Petitioner made no assignments of error in her petition and offered no evidence to prove that she had reasonable cause or acted in good faith in not reporting those distributions on her return.  Therefore, the Court finds petitioner conceded her liability for an accuracy-related penalty on the portion of her underpayment attributable to her failure to include in her taxable income for 2008 her remaining IRA distributions.  See Rule 34(b); Leahy v. Commissioner, 87 T.C. 56, 73-74 (1986) (failing to argue against liability for addition to tax under section 6651(a) at trial or on brief is a deemed concession).  Accordingly, the Court holds that she is liable for the section 6662(a) and (b)(2) penalty on the portion of her underpayment attributable to the unreported IRA distributions of $64,597.17 insofar as the Rule 155 computations show an underpayment, a portion of which is due to a substantial understatement of income tax.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

**[\*24]** To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.